UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK



UNITED STATES DISTRICT COURT
FILED
SEP 17 2015
MICHAEL J. ROEMER, CLERK
WESTERN DISTRICT OF NY

---

DANIEL C. BRYNDLE,

        Plaintiff,

v.

BOULEVARD TOWERS, II, LLC,

        Defendant.

**DECISION AND ORDER**

6:12-CV-06090 EAW

---

## INTRODUCTION

Plaintiff Daniel C. Bryndle ("Plaintiff") commenced this action against defendant Boulevard Towers, II, LLC ("Defendant") seeking damages for injuries Plaintiff allegedly sustained when he slipped and fell on ice located on a parking lot owned by Defendant. Presently before the Court is Defendant's motion for summary judgment (Dkt. 30), Defendant's motion to strike certain exhibits attached to Plaintiff's opposition to the summary judgment motion (Dkt. 48), and Plaintiff's motion for spoliation sanctions (Dkt. 69). Because there are genuine issues of material fact regarding Defendant's alleged negligence, the summary judgment motion is denied. In addition, for the reasons set forth below, Defendant's motion to strike is granted in part and denied in part, and Plaintiff's spoliation motion is denied.

## BACKGROUND

Plaintiff resided at Defendant's apartment complex located at 120 Meyer Road, Amherst, New York. (Dkt. 30-1 at ¶ 1; Dkt. 43-1 at ¶ 1). On December 10, 2011, Plaintiff awoke between 8:30 a.m. and 9:00 a.m. (Dkt. 30-1 at ¶ 2; Dkt. 43-1 at ¶ 2).

- 1 -

Approximately 20 minutes later, Plaintiff left his second-floor apartment, walked down a stairwell to the first floor, and exited the building to the parking lot. (Dkt. 30-1 at ¶¶ 3-4; Dkt. 43-1 at ¶¶ 3-4). Plaintiff walked along a 35-yard long sidewalk leading to one of Defendant's parking lots. (Dkt. 30-1 at ¶¶ 5, 8; Dkt. 43-1 at ¶¶ 5, 8). Plaintiff described the sidewalk as "fine," reported that he did not have any trouble with his footing, and did not recall observing any snow or ice on the sidewalk. (Dkt. 30-1 at ¶¶ 6-7; Dkt. 43-1 at ¶¶ 6-7). Plaintiff did not recall if it was snowing at the time he left his apartment (Dkt. 30-1 at ¶ 9; Dkt. 43-1 at ¶ 9), but noted that the weather was windy, and the temperature was about 20 degrees (Dkt. 30-1 at ¶ 10; Dkt. 43-1 at ¶ 10).

Defendant's property has four parking lots, and Plaintiff was walking to the "back side" parking lot where his car was parked. (Dkt. 30-1 at ¶ 12; Dkt. 43-1 at ¶ 12). Plaintiff walked another 40 to 50 yards across the back side parking lot to his car. (Dkt. 30-1 at ¶ 11; Dkt. 43-1 at ¶ 11). Plaintiff contends that the parking lot was covered with snow, but there were also spots where blacktop was visible. (Dkt. 30-7 at 14:1-4). Plaintiff did not have any problem with his footing as he began walking across the lot. (Dkt. 30-7 at 13:19-22; 14:9-11).

However, when Plaintiff was about eight feet from his car, he stepped on a "thin sheet" of ice approximately 25 feet in diameter that was hidden underneath the snow, causing Plaintiff to fall. (Dkt. 30-1 at ¶ 15; Dkt. 30-7 at 15:1-16:4; Dkt. 43-1 at ¶ 15). Plaintiff was taken by ambulance to Millard Fillmore Hospital immediately following his fall, where he was diagnosed with a fracture of the ninth rib posteriorly. (Dkt. 30-1 at

¶ 32; Dkt. 43-1 at ¶ 32). Two days later on December 12, 2011, Plaintiff was diagnosed with rib fractures at four through ten posteriorly. (Dkt. 30-1 at ¶ 33; Dkt. 43-1 at ¶ 33).

Plaintiff had resided in Defendant's apartment complex for four years, and in the specific building where he was living at the time of the accident for two months. (Dkt. 30-1 at ¶ 20; Dkt. 43-1 at ¶ 20). Plaintiff testified that he did not see the ice before he fell (Dkt. 30-1 at ¶ 16; Dkt. 43-1 at ¶ 16), and that he had never seen an ice patch in that area before, nor had he ever heard anyone talking about an ice patch in that location (Dkt. 30-1 at ¶ 17; Dkt. 43-1 at ¶ 17). Plaintiff also testified that he never had any discussions with anyone at Defendant's apartment complex about a patch of ice appearing where he fell, and he was not aware of anyone who could testify to the existence of an icy condition where he fell. (Dkt. 30-1 at ¶¶ 18-19; Dkt. 43-1 at ¶¶ 18-19).

Brandon Layton was the groundskeeper for Defendant on December 10, 2011. (Dkt. 30-1 at ¶ 21; Dkt. 43-1 at ¶ 21). Mr. Layton testified that he started his work that day by plowing Defendant's four parking lots in the "wee hours of the morning" and, as soon as he finished plowing, he began salting those areas. (Dkt. 30-8 at 4:2-4; 45-3 at 13). Mr. Layton testified that he was in the back side parking lot twice before Plaintiff fell, including being in the lot approximately 45 minutes before Plaintiff fell. (Dkt. 30-8 at 5:21-23, 9:15-22). However, the snow removal log completed by Mr. Layton indicates that he started work on the date of the incident at 8:30 a.m., and that document does not reflect that Mr. Layton plowed the parking lot on the date of the incident. (Dkt. 45-1 at 6; *see also* Dkt. 44-6). Plaintiff did not observe anyone removing snow or ice in the parking lot from the time he awoke around 8:30 a.m. until the time he fell in the parking lot (Dkt.

44-1 at 64:2-7), and according to Plaintiff, the parking lot did not appear to have been plowed or salted when he was walking to his car (Dkt. 44-1 at 42:16-23).

Mr. Layton testified that he did not notice any ice patches in the back side parking lot when he was plowing or salting during the morning of December 10, 2011, and he did not notice any water pooling or ice forming in the parking lot. (Dkt. 30-1 at ¶¶ 25-26; Dkt. 43-1 at ¶¶ 25-26). Mr. Layton further testified that he was not aware of anyone ever discussing precipitation accumulating or ice forming in the parking lot. (Dkt. 30-1 at ¶ 27; Dkt. 43-1 at ¶ 27). Mr. Layton also testified that he was not aware of any other incidents of guests or residents slipping and falling in the back side parking lot. (Dkt. 30-1 at ¶ 28; Dkt. 43-1 at ¶ 28).

Noelle Hofmeyer, the manager for Defendant's Amherst property, testified that she was unaware of anyone ever falling on ice in the back side parking lot, other than Plaintiff. (Dkt. 30-1 at ¶¶ 29-30; Dkt. 43-1 at ¶¶ 29-30).

The parties agree that there are no accident reports, and Defendant is not aware of any incidents on its property where anyone reported ice, falling, or discussed any dangerous condition in the back side parking lot prior to Plaintiff's fall. (Dkt. 30-1 at ¶ 31; Dkt. 43-1 at ¶ 31).

## PROCEDURAL HISTORY

Plaintiff filed his complaint on January 27, 2012, in Erie County Supreme Court. (Dkt. 1-1 at 2-5). Defendant filed a timely notice of removal to this Court based on diversity jurisdiction on February 22, 2012. (Dkt. 1). Defendant answered the complaint

on January 28, 2012 (Dkt. 2), and the case was referred to the Honorable Marian W. Payson, United States Magistrate Judge (Dkt. 5).

On November 21, 2013, Defendant filed a motion before Judge Payson to preclude Plaintiff's treating physicians from testifying to permanency and causation or, in the alternative, that the Court require Plaintiff to supplement his disclosures to detail his physicians' proposed testimony relating to permanency and causation. (Dkt. 22). Defendant also filed a motion before Judge Payson to preclude Plaintiff's liability expert, John A. Serth, Jr., on the grounds that (1) he was not qualified to provide an expert opinion regarding the construction of the parking lot at issue, and (2) he could not offer opinion evidence concerning the adequacy of Defendant's snow maintenance program as this evidence was not disclosed in his report. (Dkt. 29).

Oral argument on the motions was held on April 25, 2014, and a ruling was issued from the bench. (Dkt. 57 & 58). Judge Payson granted Defendant's motion to limit the testimony of Plaintiff's treating physicians as to permanency and causation on the ground that those opinions were not adequately disclosed, but permitted Plaintiff to supplement his disclosures by April 19, 2014. (Dkt. 58). Judge Payson granted in part and denied in part Defendant's motion to preclude testimony by Mr. Serth, finding that he was qualified to testify to the construction of the parking lot and in general to winter maintenance procedures for paved surfaces. However, Mr. Serth could not offer any opinions with respect to the adequacy of Defendant's snow maintenance program because those opinions were not timely disclosed. (Id.).

On November 21, 2013, Defendant filed a motion for summary judgment. (Dkt. 30). Plaintiff responded on January 9, 2014. (Dkt. 43, 44, 45). On January 23, 2014, Defendant filed a motion to strike several exhibits from the opposition Declaration of Plaintiff's counsel, Jeffrey B. Novak, Esq., including: (1) photographs attached as Exhibits C, D, and E; (2) the climatological report attached as Exhibit L; and (3) the K.J. Contracting, LLC ("K.J. Contracting") invoices attached as Exhibit H. (Dkt. 48). Defendant also filed a reply to its motion for summary judgment. (Dkt. 49). Plaintiff filed a response to Defendant's motion to strike on February 6, 2014 (Dkt. 53), and Defendant replied on February 20, 2014 (Dkt. 56).

The case was transferred to the undersigned on December 4, 2014. (Dkt. 64). The Court heard oral argument on the motion on January 13, 2015, and reserved decision. (Dkt. 66).

Thereafter, on June 26, 2015, Plaintiff filed a motion for spoliation sanctions, claiming that Defendant's repaving and alterations to the parking lot some three years earlier constituted the culpable destruction of evidence. (Dkt. 69). Defendant filed its response on July 13, 2015 (Dkt. 71), and Plaintiff replied on July 17, 2015 (Dkt. 72). On July 21, Defendant sent a letter to the Court, objecting to portions of Plaintiff's reply. (Dkt. 74). Later that day, Plaintiff sent a letter to the Court, objecting to assertions made by Defendant in its July 21, 2015 letter. (Dkt. 75).

## DISCUSSION

### I.  Jurisdiction

"Federal courts are powerless to adjudicate a suit unless they have subject matter jurisdiction." *European Cmty. v. RKR Nabisco, Inc.*, 764 F.3d 129, 143 (2d Cir. 2014). The Court has jurisdiction over this case pursuant to 28 U.S.C. § 1332.  Pursuant to § 1332, a federal court may exercise jurisdiction over a case between citizens of different states where the amount in controversy exceeds $75,000.  *See* 28 U.S.C. § 1332(a); *see also Purdue Pharma L.P. v. Kentucky*, 704 F.3d 208, 213 (2d Cir. 2013) ("Congress has granted district courts original jurisdiction over . . . certain cases between citizens of different states, so long as the requirements of complete diversity and amount in controversy are met.").

As noted above, Defendant filed its notice of removal on February 22, 2012.  (Dkt. 1).  However, the notice of removal was inadequate because Defendant is an LLC, and the notice did not identify the citizenship of its members.  *See Altissima Ltd. v. One Niagara LLC*, No. 08-cv-756 (S)(M), 2010 U.S. Dist. LEXIS 11718, at *7 (W.D.N.Y. Feb. 8, 2010) ("'For purposes of diversity jurisdiction, a limited liability company has the citizenship of its membership.'") (quoting *Handelsman v. Bedford Vill. Assocs. Ltd. P'ship*, 213 F.3d 48, 51-52 (2d Cir. 2000)).

At oral argument on January 13, 2015, the Court directed Defendant to provide a statement detailing the citizenship of its members.  (Dkt. 66).  The Court received Defendant's submission dated January 27, 2015.  (Dkt. 76).  On February 10, 2015, Plaintiff filed a declaration in response to Defendant's submission, stating that while he

"believes the interests of justice are best served by remaining before this Honorable Court," Defendant's declaration is "deficient in several respects," including that the declaration is not made by "Defendant," there is no documentary evidence confirming the residence of the various entities and individuals, and the declarant does not state that he has personal knowledge of the various entities. (Dkt. 67 at 1-2).

The declaration submitted by Defendant is sufficient to meet the requirements of 28 U.S.C. § 1332(a) and establish this Court's diversity jurisdiction. The declaration is submitted by Robert A. Fyffe, officer and owner of Siara Management, LLC, the managing agent for Defendant at the time of the incident. The declaration establishes that while Plaintiff is a citizen of New York, Defendant is a citizen of Ohio, Georgia, Virginia, North Carolina, Michigan, Florida, and Israel, for diversity purposes. Therefore, there is complete diversity between the parties.

Contrary to Plaintiff's contentions, there is no requirement that a corporate defendant seeking to establish diversity jurisdiction submit a declaration or affidavit from an officer of the corporation, or documentary evidence supporting the claimed diversity of citizenship. Rather, 28 U.S.C. § 1446(a) simply requires the filing of a "notice of removal signed pursuant to Rule 11 of the Federal Rules of Civil Procedure," which would permit a statement to simply be signed by counsel. Here, due to the Court's request at oral argument, Defendant went even further and submitted a declaration made under penalties of perjury pursuant to 28 U.S.C. § 1746 by Mr. Fyffe, who oversaw the operation, maintenance, and function of Defendant's property for over a decade. As a result, Defendant has adequately established this Court's diversity jurisdiction.

## II. Legal Standard on a Motion for Summary Judgment

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment should be granted if the moving party establishes "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court should grant summary judgment if, after considering the evidence in the light most favorable to the nonmoving party, the court finds that no rational jury could find in favor of that party. *Scott v. Harris*, 550 U.S. 372, 380 (2007) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)).

"Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing the 'evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial.'" *Rowe v. Wal-Mart Stores, Inc.*, 11 F. Supp. 2d 265, 266 (W.D.N.Y. 1998). Once the moving party has met its burden, the opposing party "'must do more than simply show that there is some metaphysical doubt as to the material facts. . . . [T]he nonmoving party must come forward with specific facts showing that there is a *genuine issue for trial*.'" *Caldarola v. Calabrese*, 298 F.3d 156, 160 (2d Cir. 2002) (quoting *Matsushita Elec.*, 475 U.S. at 586-87) (emphasis in original). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. . . ." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original).

Of course, "[w]hen a federal court sits in diversity, it applies federal procedural law and the substantive law of the state in which the court sits." *Dataflow, Inc. v.*

*Peerless Ins. Co.*, No. 3:11-CV-1127 (LEK/DEP), 2014 U.S. Dist. LEXIS 138042, at *5-6 n.2 (N.D.N.Y. Sept. 30, 2014) (citing *Gasperini v. Ctr. for Humanities*, 518 U.S. 415, 427 (1996)). To prevail on a negligence claim under New York law, a plaintiff must establish the following: (1) the defendant owed a duty of care to the plaintiff; (2) the defendant breached that duty; and (3) the plaintiff's injuries were proximately caused by the defendant's breach. *See Bluth v. Bias Yaakov Acad. for Girls*, 123 A.D.3d 866, 866 (2d Dep't 2014). "Despite the availability of summary judgment for negligence claims, it is very hard to show that there are no questions of material fact in negligence cases." *Cartin v. United States*, 853 F. Supp. 63, 65 (N.D.N.Y. 1994) ("The very question of whether the defendant's conduct amounts to 'negligence' is inherently a question for the fact-trier in all but the most egregious instances.") (quotation omitted).

## III.   Defendant's Duty of Care

Defendant first argues that it owed no duty of care to Plaintiff because the ice on which Plaintiff fell was a "thin sheet" of ice, rather than ridgy and bumpy ice. (Dkt. 30-14 at 8-12). Defendant cites *Klein v. United States*, 339 F.2d 512 (2d Cir. 1964), which states that "[u]nder New York law, a landlord has a duty to his tenants to use reasonable care in keeping common passageways safe for their use," but "[t]his duty . . . does not extend to 'the natural accumulation of ice unless unusually ridgy and bumpy.'" *Id.* at 515 (citations omitted).

The law with respect to a property owner's duty of care has evolved since the Second Circuit Court of Appeals issued its decision in *Klein*.[1] In 1964, when *Klein* was decided, the common law rule governing when a property owner owed a duty of care to someone injured on his property depended on whether the injured person was a trespasser, guest, or invitee. *Basso v. Miller*, 40 N.Y.2d 233, 238-39 (1976). However, in 1976, the New York Court of Appeals decided *Basso v. Miller*, imposing "on owners and occupiers a single duty of reasonable care in all the circumstances." *Id.* at 240. Accordingly, liability no longer hinges on the status of the injured person. The modern rule in New York is now a single standard "of reasonable care under the circumstances whereby foreseeability shall be a measure of liability." *Id.* at 241.

In order to breach its duty of care, a property owner must have either created the dangerous condition or had actual or constructive notice of it. *Rudloff v. Woodland Pond Condo. Ass'n*, 109 A.D.3d 810, 812 (2d Dep't 2013); *see also Lattimore v. First Mineola*

[1] The only recent case citing to *Klein* for the proposition that a landowner owes no duty of care to protect others from accumulations of smooth ice on his property, is an unreported case from New York Supreme Court, *Tamhane v. Citibank*, No. 110136/06, 2008 N.Y. Misc. LEXIS 9156 (N.Y. Sup. Ct. Sept. 17, 2008). In *Tamhane*, the court stated that "[a] New York landlord may also be held liable for accumulations of ice, even though smooth, if they are promoted by a dangerous condition which the landlord allows to persist." *Id.* at *3-4. After citing this portion of the *Klein* decision, the *Tamhane* court then explains that if a plaintiff establishes that a dangerous condition, such as ice drippings, was a recurring condition, the landlord could be charged with constructive notice of the condition. *Id.* Accordingly, *Tamhane* cites *Klein* for the principle that proof of a recurrent condition may establish constructive notice, even when the dangerous condition involves smooth ice.

Of note, the *Klein* decision is also cited in the Comment section to New York Pattern Jury Instructions 2:105 for the suggestion that a lessor remains responsible for common passageways, including sidewalks, in a building where separate apartments are rented to different tenants, but this duty does not extend to "natural accumulations of ice" on the sidewalks. *See* N.Y. Pattern Jury Instructions – Civil PJI 2:105 (Dec. 2014).

*Co.*, 60 A.D.3d 639, 641 (2d Dep't 2009) ("An owner of real property, or a party in possession or control thereof, may be liable for a hazardous snow or ice condition existing on the property as a result of the natural accumulation of snow or ice only upon a showing that it had actual or constructive notice of the hazardous condition and that a sufficient period of time elapsed since the cessation of the precipitation to permit the party to remedy the condition."); *Robinson v. Trade Link Am.*, 39 A.D.3d 616, 616-17 (2d Dep't 2007) (where the plaintiff slipped on a patch of "black ice," stating that a property owner is liable for a slip-and-fall accident involving snow and ice if it created the dangerous condition or had actual or constructive notice thereof).

Certainly, the type of ice will be relevant to whether the property owner had actual or constructive notice of the icy condition, as "black" or "smooth" ice is generally not visible and apparent. *See, e.g., Lillie v. Wilmorite, Inc.*, 92 A.D.3d 1221, 1222 (4th Dep't 2012) (noting that the defendant met its initial burden of demonstrating that it did not have actual or constructive notice of the icy condition, as the patch of black ice was not "visible and apparent"); *Phillips v. Henry B's, Inc.*, 85 A.D.3d 1665, 1666 (4th Dep't 2011) (trial court erred in denying the defendant's motion for summary judgment addressed to the issue of actual or constructive notice of icy condition in parking lot, where black ice was not visible and apparent). In other words, the type of ice involved in the injury is relevant to the issue of whether a duty of care was breached. However, this Court cannot accept Defendant's argument that the type of ice will determine whether a property owner owed a duty of care in the first instance.

Accordingly, the Court rejects Defendant's contention that it did not owe Plaintiff a duty of reasonable care because the ice on which Plaintiff fell was smooth. "Generally, a landowner owes a duty of care to maintain his or her property in a reasonably safe condition." *Gronski v. Cnty. of Monroe*, 18 N.Y.3d 374, 379 (2011). "That duty is premised on the landowner's exercise of control over the property, as 'the person in possession and control of property is best able to identify and prevent any harm to others.'" *Id.* (quoting *Butler v. Rafferty*, 100 N.Y.2d 265, 270 (2003)). Specifically, in the context of the case at hand, "[a]nalysis of a case involving a slip and fall in winter conditions starts with the well-settled principle that a party who possesses or controls real property is under a duty to exercise reasonable care under the circumstances. This standard must be applied with an awareness of the realities of the problems caused by winter weather." *Marcellus v. Nathan Littauer Hosp. Ass'n*, 145 A.D.2d 680, 681 (3d Dep't 1988) (citations omitted).

## IV. Defendant's Motion to Strike

Before addressing whether there are material issues of fact as to Defendant's breach of its duty of care, the Court will resolve Defendant's motion to strike. Defendant seeks to exclude from the Court's consideration three items of evidence attached to Plaintiff's counsel's declaration submitted in opposition to the summary judgment motion: (1) the K.J. Contracting invoices attached as Exhibit H; (2) the climatological report attached as Exhibit L; and (3) photographs attached as Exhibits C, D, and E.

## A.    K.J. Contracting Invoices

Plaintiff relies on invoices from K.J. Contracting to argue that the repaving and installation of catch basins at the parking lot between August 2011 and October 2011, was performed improperly so as to cause a condition which allowed puddles of water to accumulate (thus ultimately leading to the sheet of ice upon which Plaintiff allegedly fell). (*See* Dkt. 43 at 14-15; *see also id.* at 17 ("These changes to the parking lot created a defective design with improper sloping that resulted in pooling water. . . .")).

Defendant has moved to strike the K.J. Contracting invoices for lack of foundation and as inadmissible hearsay. (Dkt. 48-2 at 5-7). "The principles concerning admissibility of evidence do not change on a motion for summary judgment. Therefore, a motion to strike is appropriate if documents or affidavits submitted in support of a motion for summary judgment contain inadmissible hearsay, conclusory or incomplete statements, or evidence that has not been properly authenticated." *Degelman Indus. v. Pro-Tech Welding & Fabrication, Inc.*, No. 06-CV-6346, 2011 U.S. Dist. LEXIS 155984, at *6-7 (W.D.N.Y. May 31, 2011) (internal citation omitted).

The K.J. Contracting invoices attached as Exhibit H to Plaintiff's counsel's declaration are inadmissible hearsay. The invoices were created by K.J. Contracting, which is not a party to the action, and they are offered for the truth of the matter asserted, *i.e.*, to show that certain work was performed on Defendant's property. The invoices may be records of a regularly-conducted activity pursuant to Fed. R. Evid. 803(6) and thus excepted from the rule against hearsay; however, records qualifying under this exception must be supported by the testimony of a custodian or another qualified witness, stating

that the records are kept in the course of a regularly-conducted business activity, and it was the regular practice of the business to make the records.[2] Here, Plaintiff has failed to provide the testimony of a records custodian, as required by Fed. R. Evid. 803(6). *See F.T.C. v. Med. Billers Network, Inc.*, 543 F. Supp. 2d 283, 308 n.26 (S.D.N.Y. 2008) (declining to consider information submitted in support of summary judgment motion under business-record exception because the party seeking to rely on the information "ha[d] not submitted the necessary foundation testimony" through the "testimony of the custodian or other qualified witness or certification under Rules 902(11) or 902(12)"); *Guardian Life Ins. Co. v. Gilmore*, 45 F. Supp. 3d 310, 330-31 (S.D.N.Y. Sept. 2014) (declining to consider on motion for summary judgment a funeral bill as business record because the defendant failed to provide testimony by funeral bill's custodian or another qualified witness, or by certification); *see also Chansamone v. IBEW Local 97*, 523 F. App'x 820, 823 n.4 (2d Cir. 2013) ("[A party] cannot rely on inadmissible hearsay in opposing a motion for summary judgment") (alteration in original); *Burlington Coat Factory Warehouse Corp. v. Esprit de Corp.*, 769 F.2d 919, 924 (2d Cir. 1985) (same).

---

[2]    Fed. R. Evid. 803(6) excepts "records of a regularly conducted activity," from the hearsay bar if:

    (A)    the record was made at or near the time by – or from information transmitted by – someone with knowledge;

    (B)    the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit;

    (C)    making the record was a regular practice of that activity;

    (D)    all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and

    (E)    the opponent does not show that the possible source of information or other circumstances indicate a lack of trustworthiness.

Plaintiff argues that the K.J. Contracting invoices fall under the "residual exception" to the hearsay rule, or Fed. R. Evid. 807, which provides, in relevant part, as follows:

> Under the following circumstances, a hearsay statement is not excluded by the rule against hearsay even if the statement is not specifically covered by a hearsay exception in Rule 803 or 804:
>
> (1)    the statement has equivalent guarantees of trustworthiness;
>
> (2)    it is offered as evidence of a material fact;
>
> (3)    it is more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts; and
>
> (4)    admitting it will best serve the purposes of these rules and the interests of justice.

Fed. R. Evid. 807(a). Plaintiff's argument with respect to Rule 807 is unavailing.

Rule 807 is not intended to address situations already covered by Rules 803 or 804, such as the business record exception to hearsay recognized by Rule 803(6). *See, e.g., Glowczenski v. Taser Int'l Inc.*, 928 F. Supp.2d 564, 573 (E.D.N.Y. 2013) (Rule 807 inapplicable where evidence specifically covered by Rule 803(18)). Rather, as indicated by the express language of Rule 807, it pertains to statements that are "not specifically covered by a hearsay exception in Rule 803 or 804." *See* Fed. R. Evid. 807(a). As noted by the Advisory Committee notes from 1974 to Rule 803(24), the predecessor to Rule 807, the residual hearsay exception was "intended [to] . . . be used very rarely, and only in exceptional circumstances." *See* Fed. R. Evid. 803 advisory committee's note to 1974 adoption. *See also Aedes De Venustas, Inc. v. Venustas Int'l, LLC*, 73 Fed. R. Evid. Serv. (Callaghan) 1153, 2007 U.S. Dist. LEXIS 50143, at *7 (S.D.N.Y. 2007) (denying admission of evidence pursuant to Fed. R. Evid. 807, and noting that "although

subpoenaing the letter's authors may prove inconvenient for the Plaintiff, it would not be an 'unreasonable' effort, and thus the letters are not 'more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts.'").

Here, Plaintiff could have sought to establish the admissibility of the invoices through a certification from an employee of K.J. Contracting or testimony at a deposition through the use of a third-party subpoena. Furthermore, Plaintiff could have questioned Defendant's representatives at their depositions about the invoices and Defendant's representatives may have been able to fulfill the requirements of Rule 803(6). *See, e.g.*, *Phoenix Assocs. III v. Stone*, 60 F.3d 95, 101 (2d Cir. 1995) ("The custodian need not have personal knowledge of the actual creation of the document. . . . Nor is there any requirement under Rule 803(6) that the records be prepared by the party who has custody of the documents and seeks to introduce them into evidence. Rather, all that is required is proof that it was the business entity's regular practice to get information from the person who created the document. . . .") (quotation omitted); *United States v. Jakobetz*, 955 F.2d 786, 801 (2d Cir. 1992) ("Even if the document is originally created by another entity, its creator need not testify when the document has been incorporated into the business records of the testifying entity."); *In re Ollag Constr. Equip. Corp.*, 665 F.2d 43, 46 (2d Cir. 1981) (financial statements provided to a bank by a company seeking to refinance a loan were admissible as the bank's business records because they were "integrated into [the bank's] records and relied upon in its day-to-day operations."); *United States v. Adefehinti*, 510 F.3d 319, 326 (D.C. Cir. 2007) ("[S]everal courts have found that a

record of which a firm takes custody is thereby 'made' by the firm within the meaning of the rule. . . . We join those courts.") (citing decisions of the Second, Fifth, Ninth, and Tenth Circuit Courts)).

In other words, Plaintiff had a variety of tools at his disposal to authenticate and lay the foundation for these invoices, but he failed to avail himself of these opportunities. Plaintiff offers no argument in response to Defendant's motion to strike as to why he did not, through discovery, establish the admissibility of the K.J. Contracting invoices. While the invoices themselves may have been produced by Defendant in response to Plaintiff's discovery demands, this does not, in and of itself, make the invoices admissible. As a result, the Court will not consider them. Accordingly, there is no evidence in the record that work was performed on the subject parking lot in the August through October 2011 timeframe, prior to the December 2011 incident.

### B.     Climatological Records

Plaintiff's liability expert witness, John A. Serth, Jr., P.E. ("Serth"), relies upon climatological data for the Buffalo airport, attached as Exhibit L to Plaintiff's counsel's declaration. Defendant seeks to strike the reports, arguing that the Buffalo airport is 10 miles from the accident site. (Dkt. 48-2 at 4-5). Plaintiff argues that the two sites are six miles apart. (Dkt. 53-1 at 9).

Climatological records for neighboring locales may in some instances serve as evidence of general weather conditions. *See Olejniczak v. E.I. du Pont Nemours & Co.*, 79 F. Supp. 2d 209, 214 (W.D.N.Y. 1999); *Morris v. City of N.Y.*, No. 102322/09, 2010

N.Y. Misc. LEXIS 4875, at *11-13 (N.Y. Sup. Ct. Oct. 7, 2010) (collecting cases);[3] *c.f.*

*Raimond v. United States*, No. 02-CV-0620E(SR), 2004 WL 2108364, at *2 (W.D.N.Y.

Sept. 21, 2004) ("Climatological conditions . . . may vary from one locale to another

situated three to five miles away. Consequently, the United States' expert report is

insufficient to demonstrate the weather conditions at the Hospital when Raimond fell.").

However, Plaintiff is attempting to use the Buffalo airport to establish the specific

temperatures as evidence of freeze-thaw cycles some six to ten miles away. Plaintiff's

attempt to use the climatological records in this manner is inappropriate. *See Bellomo v.*

*United Arab Shipping Co.*, 863 F. Supp. 107, 110-11 (E.D.N.Y. 1994) (where the

defendant contended that no ice had formed on deck of ship, and submitted

climatological data recorded at the airport located one mile from the port where the ship

was docked, and argued that the air temperature was not at or below the freezing point

prior to its turnover of the ship, finding that "the weather reports relied upon by

Defendant, which were recorded one mile inland from the port, do not provide conclusive

evidence of the prevailing climatological conditions"); *Duffy-Duncan v. Berns & Castro*,

45 A.D.3d 489, 490 (1st Dep't 2007) ("The certified climatological reports submitted by

defendants, and unaccompanied by an expert opinion, were insufficient to demonstrate a

lack of constructive notice inasmuch as the reports, evidencing temperature readings

---

[3] Of course, "'the Federal Rules of Evidence, rather than state evidentiary laws, are held to apply in federal diversity proceedings.'" *Meyer v. Meyer*, No. 1:08-cv-1136 (GLS/RFT), 2010 U.S. Dist. LEXIS 63642, at *18-19 n.6 (N.D.N.Y. June 25, 2010) (quoting *Legg v. Chopra*, 286 F.3d 286, 289-90 (6th Cir. 2002)). However, state court cases may be relevant on questions of reliability in slip-and-fall cases. *See Raimond v. United States*, No. 02-CV-0620E(SR), 2004 WL 2108364, at *2 n.15 (W.D.N.Y. Sept. 21, 2004).

hovering around the freezing mark in the hours leading up to plaintiff's fall, were taken in neighboring counties, and are not dispositive as to the conditions of the site of plaintiff's fall. . . ."). *See also Raimond*, 2004 WL 2108364, at \*2 (expert report based on climatological conditions at Buffalo airport insufficient to demonstrate weather conditions at hospital located three to five miles away).

Serth's report relies on the climatological records contained in Exhibit L not only for a general weather condition ("The weather reports show that it had snowed on December 9, 2011 until around 11:00 p.m."), but also for specific temperatures ("The temperature had been in the upper 30's around noon on the 9th but had dropped below the freezing point to the upper 20's by midnight," and "[o]n December 10, 2011, there was no more snow. The temperature had dropped to 21 degrees at 7:54 a.m."), in order to support a freeze-thaw theory with regard to the melting and formation of ice in Defendant's back side parking lot. (Dkt. 45-4 at 8-11). The reliance on the climatological records in this manner causes the opinion to be wholly speculative.

Therefore, although the Court declines to strike the climatological records, the Court will not consider them as evidence of the specific temperatures in the back side parking lot.

### C.    The Photographs

Plaintiff initially attempted to submit the photographs through his counsel's declaration, which is plainly insufficient to comply with the Federal Rules of Evidence. However, Plaintiff supplemented that submission in response to Defendant's motion to strike with an affidavit from Corey J. Hogan, Esq., who took the photographs at issue.

(Dkt. 53-7). Mr. Hogan's affidavit is sufficient to lay the foundation for the admissibility of these photographs, and accordingly, the Court declines to strike the photographs from the record in this case. The issues raised by Defendant relating to inconsistencies between the photographs and testimony go to weight, rather than to admissibility.

## V.    Defendant's Breach of its Duty of Care

Defendant raises many credible arguments in support of summary judgment, from persuasive arguments concerning the lack of evidence that it created the allegedly dangerous condition to solid arguments that it lacked actual or constructive notice, as demonstrated by even Plaintiff's admission that he had lived in Defendant's apartment complex for four years and never noticed any ice in the location of the incident. However, the record demonstrates that there is conflicting evidence as to whether Defendant's employee, Mr. Layton, inspected, plowed and salted the parking lot as he claims prior to Plaintiff's fall. Plaintiff argues in opposition to summary judgment that Defendant had a duty to inspect the parking lot, and Mr. Layton's alleged failure to inspect when under a duty to do so renders the issue of actual or constructive notice irrelevant. (Dkt. 43 at 16). Defendant responds by arguing that any inspections would have been useless if the ice formed moments before Plaintiff's fall, and that "inspections do not create absolute liability for any entity with a maintenance staff. . . ." (Dkt. 49 at 10-11).

"[T]he issue of actual or constructive notice is irrelevant where defendant had a duty to conduct reasonable inspections of the premises and failed to do so." *Tuthill v. United States*, 270 F. Supp. 2d 395, 400-01 (S.D.N.Y. 2003) (denying summary judgment

where the defendant had a duty to inspect for snow and ice, and a genuine issue of fact existed as to whether the defendant's inspections were reasonable) (citing *Meyer v. State of N.Y.*, 403 N.Y.S.2d 420, 424 (N.Y. Ct. Cl. 1978)); *see also Weller v. Coll. of the Senecas*, 217 A.D.2d 280, 285 (4th Dep't 1995) ("if the defendant has a duty to conduct reasonable inspections, the issue of actual or constructive notice is irrelevant"); *Watson v. City of N.Y.*, 184 A.D.2d 690, 690 (2d Dep't 1992) (holding that it was error for the trial court to set aside the jury verdict and dismiss the complaint due to insufficient evidence of actual or constructive notice; court failed to instruct the jury on the defendant's statutory duty to conduct reasonable inspections of the property, and "the issue of notice is irrelevant in light of the defendant's duty to conduct reasonable inspections."); *Meyer*, 403 N.Y.S.2d at 424 (holding that the defendant's ignorance of dangerous condition on bridge, which it knew existed, was not a defense to the action, and noting that "[w]here there is a failure to inspect, constructive notice need not be proved.").[4]

Defendant attempts to distinguish these cases. Defendant contends that the facts of *Tuthill* are distinct because the plaintiff saw ice prior to falling (Dkt. 49 at 11), a fact that was relevant to the court's determination of whether the dangerous condition was

---

[4]    Some courts, as opposed to suggesting that a duty to inspect causes the issue of constructive notice to become irrelevant, instead indicate that a property owner owing a duty to inspect is charged with constructive notice of a dangerous condition that would have been discovered by a reasonable inspection. *See Lacey v. Target Corp.*, No. 13 CV 4098 (RML), 2015 U.S. Dist. LEXIS 62643, at *13-14 (E.D.N.Y. May 13, 2015); *Silverman v. United States*, No. CV 04-5647 (ETB), 2008 U.S. Dist. LEXIS 25041, at *51 (E.D.N.Y. Mar. 28, 2008). In other words, constructive notice is still relevant, and the failure to inspect is a means by which to establish constructive notice. Under either articulation of the principle, the Court determines that there are disputed issues of material fact as to whether Defendant failed to reasonably inspect its property, and whether, if it had, the ice would have been discovered.

"open and obvious," 270 F. Supp. 2d at 399. Indeed, the court found that there was a factual dispute relating to whether the ice was open and obvious, but it also on a separate basis found that there was an issue of fact as to whether the defendant's inspections were unreasonable. *Id.* at 401 ("whether or not these inspections were reasonable is a question for a jury to decide."). In other words, the *Tuthill* court's finding that the plaintiff saw the ice prior to falling was irrelevant to its determination that there were issues of fact concerning the reasonableness of the defendant's inspections.

Defendant also seeks to distinguish the *Watson* case on the ground that it involved a statutory duty to conduct reasonable inspections. (Dkt. 49 at 11). Certainly, a property owner may owe a duty to conduct reasonable inspections based upon a statutory obligation, such as the duty imposed by the Administrative Code of the City of New York in *Watson*. However, the common law also imposes obligations under certain circumstances on property owners to conduct reasonable inspections, such as in the case of a landlord's duty to inspect and maintain its common areas. *See Wynn v. T.R.I.P. Redev. Assoc.*, 296 A.D.2d 176, 179 (3d Dep't 2002) ("Under long-standing common law, a landlord has a duty to use ordinary care to keep those areas which are reserved and intended for the common use of the tenants and owner of the building and subject to the landlord's control, i.e., the common areas, 'in a reasonably safe and suitable condition.'").

Defendant does not dispute that it had a duty to conduct reasonable inspections of the premises. Instead, Defendant argues that there is no evidence as to when the ice formed and, thus, any failure to inspect is irrelevant. (Dkt. 49 at 10-11). According to

Defendant, if the ice "formed moments before Plaintiff's fall, inspections would have been useless." (*Id.* at 11).[5] These are arguments Defendant may make to a jury, but they cannot be resolved on a summary judgment motion. In other words, the reasonableness of Defendant's inspections, particularly in view of the disputed testimony concerning Mr. Layton's activities on the morning in question, raise issues of fact for the jury.

Mr. Layton testified during his deposition that he was employed by Defendant as a "grounds keeper" (Dkt. 45-3 at 10:4), and that he would "[make] sure the property is upkept" (*id.* at 10:6-13). Mr. Layton also testified that it was part of his responsibility as groundskeeper to perform periodic inspections of the grounds. (*Id.* at 11:6-9). Mr. Layton testified that he plowed Defendant's parking lots in the "wee hours of the morning" on the date in question, and as soon as he finished plowing, he began salting those areas. (Dkt. 30-8 at 4:2-4; 45-3 at 13:2-4). Mr. Layton testified he was in the

---

[5]    The Court questions whether the principles articulated by the Second Circuit Court of Appeals in *Klein* are more appropriately considered in the context of a duty to inspect. In other words, as discussed in Part III of this Decision and Order, the Court rejects the notion that a landlord owes no duty of care to a plaintiff who is injured by smooth ice. However, the *Klein* principle that a landlord owes no duty (except where guilty of affirmative negligence in causing the accumulation of ice or allowing a recurring dangerous condition) may be more appropriately applied in the context of a duty to inspect. If so, this would mean that a landlord is not liable for failing to inspect when a plaintiff is injured by smooth ice, unless the landlord caused the accumulation of ice or allowed a recurring dangerous condition to persist. The *Klein* court's distinction between smooth/black ice and ridgy/bumpy ice makes more sense to the Court in the context of a duty to inspect, since an inspection would be more likely to discover ridgy/bumpy ice as opposed to smooth/black ice. However, neither party raised this specific issue in their papers, with Defendant instead relying on *Klein* for the general proposition that there was no duty of care owing to Plaintiff (which the Court disagrees is the current state of the law in New York). Moreover, while the Court makes note of this possible more appropriate application of *Klein* in the context of a duty to inspect, the *Klein* decision does not make that distinction, and the Court is not aware of any other case reaching such a holding.

parking lot in question twice before Plaintiff fell, including approximately 45 minutes before Plaintiff fell. (Dkt. 30-8 at 5:21-23, 9:15-22).

However, there is conflicting evidence as to whether Mr. Layton did what he claims he did, and attended to the parking lot in question on the date of the incident. Plaintiff testified that the parking lot did not appear to have been plowed or salted, and he never observed anyone plowing the parking lot that morning. (Dkt. 44-1 at 42:16-23; 44-1 at 64:2-4). Moreover, Defendant's own records call into question Mr. Layton's testimony, as they indicate that Mr. Layton did not begin working on the date in question until 8:30 a.m. and they indicate that Mr. Layton did <u>not</u> plow that morning. (Dkt. 45-1). Furthermore, according to Plaintiff, Defendant's employee who attended to him after his fall (presumably Mr. Layton) told Plaintiff that he was going to be "fired" as a result of Plaintiff's fall (thus, at least implying that Mr. Layton had potentially shirked his responsibilities on the morning in question). (Dkt. 44-1 at 46:13-47:21).

Under the circumstances, the Court finds that there is an issue of fact concerning whether Defendant fulfilled its duty to inspect the parking lot in a reasonable manner. *Tuthill*, 270 F. Supp. 2d at 400 ("A genuine issue of fact also exists as to whether defendant's inspections were unreasonable, which would render the issue of actual or constructive notice irrelevant."). Because the Court determines that there are questions of fact on this issue precluding summary judgment, it need not resolve the other issues raised by Defendant concerning actual or constructive notice, and the creation of a dangerous condition.

## VI.  Plaintiff's Motion for Spoliation Sanctions

On June 26, 2015, Plaintiff moved for spoliation sanctions against Defendant, alleging that it performed, without notice to Plaintiff, construction and paving on the parking lot areas of its property where Plaintiff allegedly fell. (Dkt. 69). Plaintiff contends that as a result of this construction in August 2012, Plaintiff's expert, Serth, was unable to investigate or take measurements of the scene of the incident. (Dkt. 69-1 at ¶ 13). Plaintiff requests that the Court either instruct the jury that Defendant altered the improperly-sloped surface, or that Defendant be precluded from offering evidence relating to Serth's inability to investigate the scene. (*Id.* at ¶ 17).

"Spoliation is the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2d Cir. 1999). It is well-settled that "[a] party seeking [sanctions] based on the destruction of evidence must establish '(1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed with a culpable state of mind; and (3) that the destroyed evidence was relevant to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense.'" *Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 107 (2d Cir. 2002) (citation omitted). "The party seeking sanctions bears the burden of establishing all elements of a claim for spoliation of evidence." *Treppel v. Biovail Corp.*, 249 F.R.D. 111, 120 (S.D.N.Y. 2008) (citation omitted). Further, as explained in *Fujitsu Ltd. v. Fed. Express Corp.*, 247 F.3d 423 (2d Cir. 2001):

The determination of an appropriate sanction for spoliation, if any, is confined to the sound discretion of the trial judge, *see West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2d Cir. 1999), and is assessed on a case-by-case basis. *See United States v. Grammatikos*, 633 F.2d 1013, 1019-20 (2d Cir. 1980). We have recently observed that "[our] case-by-case approach to the failure to produce relevant evidence seems to be working." *Reilly v. Natwest Mkts. Group, Inc.*, 181 F.3d 253, 267 (2d Cir. 1999).

*Id.* at 436.

## A.    Duty to Preserve

With regard to the first factor, Plaintiff contends that Defendant had an obligation to preserve the parking lot because it had notice of the litigation by February 28, 2012, when it received and reviewed the complaint. (Dkt. 69-7 at 5). In support of this argument, Plaintiff cites to its complaint, which states in relevant part:

> Plaintiff's incident referred to herein was caused solely by the negligence, carelessness, and inadvertence of the Defendants by having permitted a dangerous condition to exist and persist on the aforementioned premises, *including but not limited to*, the improper maintenance and/or removal of snow and ice in an area that is open to the public which Defendants knew or should have known existed and persisted within the aforementioned premises and/or by failing to warn the Plaintiff of the aforementioned dangerous condition.

(*See* Dkt. 69-2 at ¶ 14) (emphasis added). Plaintiff contends that the "including but not limited to" language placed the Defendant on notice that the construction of its parking lot would be an issue in the case, because the area in which Plaintiff fell was "clearly relevant" to the litigation. (Dkt. 69-7 at 5).

"The obligation to preserve evidence arises when the party has notice that the evidence is relevant to litigation or when a party should have known that the evidence may be relevant to future litigation." *Fujitsu Ltd. v. Fed. Express Corp.*, 247 F.3d at 436.

In other words, a party is required "to preserve what it knows, or reasonably should know, is relevant to the action, is reasonably calculated to lead to the discovery of admissible evidence, is reasonably likely to be requested during discovery and/or is the subject of a pending discovery request." *Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 217 (S.D.N.Y. 2003).

The Court has reviewed Plaintiff's complaint and discovery responses submitted prior to the commencement of work on the parking lot, and concludes that none of those documents provide notice that construction of the parking lot would be relevant to the case. Indeed, the complaint does not mention the word "parking lot," except in reference to the fact that Defendant owned the surrounding premises at 120 Meyer Road, and does not even contain the word "construction." (*See* Dkt. 1-1). Plaintiff's inclusion of the generic phrase "including but not limited to," does not remedy this deficiency. *See Usavage v. Port Auth. of N.Y. & N.J.*, 932 F. Supp. 2d 575, 590-91 (S.D.N.Y. 2013) (defendant did not have a duty to preserve disputed video footage because it was not on notice of the potential salience of that footage; the plaintiff's "vague complaint" made on the night of the disputed events did not trigger a duty on the part of the defendant's officials to obtain all camera footage from the station); *Abcon Assocs., Inc. v. Haas & Najarian*, No. CV 12-928 (LDW) (AKT), 2014 U.S. Dist. LEXIS 142040, at *27 (E.D.N.Y. Oct. 6, 2014) (plaintiff had no duty to preserve where the defendant's defense was "novel," and "not within the purview of the normal defenses to a breach of contract action."); *Gutierrez-Bonilla v. Target Corp.*, No. CV 08-3985 (JS) (AKT), 2009 Dist. LEXIS 116958, at *11 (E.D.N.Y. Dec. 16, 2009) ("Courts in the Second Circuit have

consistently denied motions for spoliation sanctions where the moving party did not seek to inspect the evidence within a reasonable time."). Further, although some of Plaintiff's discovery responses mention Defendant's parking lot, none of those responses indicate that Plaintiff was proceeding under a theory of liability that the improper construction of Defendant's parking lot caused Plaintiff's injury.

Defendant received notice that Plaintiff intended to claim that the parking lot was improperly constructed when it disclosed its liability expert on June 5, 2013 (Dkt. 71-12) – well after the repavement work on the parking lot. Plaintiff could not have expected Defendant to anticipate its defense based on an alleged improper construction of the parking lot before that time. *See Turner v. Hudson Transit Lines, Inc.*, 142 F.R.D. 68, 72 (S.D.N.Y. 1991) ("[N]o duty to preserve arises unless the party possessing the evidence has notice of its relevance."). This factor therefore weighs against imposing spoliation sanctions on Defendant.

### B. Culpable State of Mind

With regard to the second factor, "bad faith need not be shown to justify an inference of spoliation, and . . . an adverse inference instruction may be appropriate in some cases involving the negligent destruction of evidence. . . ." *United States v. Garcia*, 596 F. App'x 24, 26 (2d Cir. 2015) (internal quotations and citations omitted). The Second Circuit Court of Appeals has concluded that determining whether a state of mind is sufficient to establish culpability must be undertaken on a case-by-case basis. *Byrnie v. Town of Cromwell Bd. of Educ.*, 243 F.3d 93, 108 (2d Cir. 2001).

Here, there is no evidence that Defendant either intentionally or negligently altered the parking lot in order to deprive Plaintiff of evidence. *See In re Terrorist Bombings of U.S. Embassies in E. Africa*, 552 F.3d 93, 148 (2d Cir. 2008) ("Even if the government had been under an obligation to preserve the tapes, [appellant] has pointed to no evidence that the tapes were intentionally destroyed, and therefore the destruction of the tapes could not have amounted to spoliation."); *Townes v. Cove Haven, Inc.*, No. 00 CV 5603(RCC), 2003 U.S. Dist. LEXIS 21640, at *10-12 (S.D.N.Y. Dec. 2, 2003) (although the defendants significantly altered the structure of the pool in which the plaintiff drowned, there was no evidence that their conduct was malicious or in bad faith). Rather, Plaintiff makes the conclusory statement that the circumstances upon which the parking lot was repaved "clearly represents negligent destruction." (Dkt. 69-7 at 6). However, Defendant offers evidence that the 2012 repaving was not performed in order to prevent Plaintiff from inspecting the parking lot or collecting evidence for the case, but was rather part of Defendant's maintenance and repair program for its large facility. (Dkt. 71-1 at ¶¶ 8-17).

Moreover, there is no credible claim that Defendant somehow altered the parking lot in a surreptitious manner. Plaintiff admits that he observed that work was being done on the parking lot. (Dkt. 69-7 at 5). As a result, Plaintiff could have taken steps at that point to seek court intervention, rather than wait until July 2015, almost three years after the work on the parking lot occurred. *See Thiele v. Oddy's Auto & Marine, Inc.*, 906 F. Supp. 158, 160 (W.D.N.Y. 1995) (denying spoliation sanction requested by the main defendant, who had been afforded the opportunity to inspect the evidence prior to its

destruction). Plaintiff should have attempted to remedy or raise this issue earlier in the case. This factor also weighs against imposing spoliation sanctions on Defendant.

## C.    Relevance of Evidence

The Court questions the validity of Defendant's contention that the design of the parking lot is irrelevant to Plaintiff's claims. With regard to the third factor, "[t]he burden falls on the 'prejudiced party' to produce 'some evidence suggesting that a document or documents relevant to substantiating his claim would have been included among the destroyed [evidence].'" *Byrnie*, 243 F.3d at 108 (quoting *Kronisch v. United States*, 150 F.3d 112, 128 (2d Cir. 1998)).

Plaintiff has submitted Serth's expert report, which plainly indicates that the slope of the parking lot is relevant to Plaintiff's claims. (*See* Dkt. 45-4). Defendant argues that it is immune as a matter of law from any allegedly dangerous condition created by K.J. Contracting because it had no control over the work performed by K.J. Contracting. (Dkt. 71 at 20-21). The Court questions whether, based on the record before it, it can be determined as a matter of law that Defendant had no control over K.J. Contracting's work. *See Nichols-Sisson v. Windstar Airport Serv. Inc.*, 99 A.D.3d 770, 773 (2d Dep't 2012) ("Under some circumstances, a property owner may be held liable for hazardous conditions created by an independent contractor, where the property owner exercises control over the work of the contractor. . . .").

Nonetheless, the Court need not resolve this issue for purposes of the spoliation motion, since the other factors plainly mandate against any finding that Defendant engaged in spoliation.

**D.   No Spoliation of Evidence**

In summary, because Plaintiff is unable to show that Defendant had notice that the design of its parking lot would be relevant to Plaintiff's claims and that Defendant acted with a culpable state of mind, Plaintiff has failed to demonstrate that Defendant engaged in spoliation of evidence to warrant the imposition of sanctions.   Accordingly, Plaintiff's motion for sanctions is denied.

## CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment is denied, Defendant's motion to strike is granted in part and denied in part, and Plaintiff's motion for spoliation sanctions is denied.

SO ORDERED.

ELIZABETH A. WOLFORD
United States District Judge

Dated:  September 16, 2015
       Rochester, New York